MARTIN S. FISHMAN, ESQ.
15 Franklin Place
Rutherford, New Jersey 07070
(201) 933-9015
Facsimile: (201) 933-9018
Attorney for Plaintiff,
*Carpe Air & Sea Shipping, Inc.*
*and Barbara Carpe*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARPE AIR & SEA SHIPPING, INC. and BARBARA CARPE, | Docket No.: |
| Plaintiff(s), | |
| vs. | **COMPLAINT** |
| MAERSK, INC. and SAFMARINE, INC. | |
| Defendant(s). | |

Plaintiffs, Carpe Air & Sea Shipping, Inc. ("CASSI") and Barbara Carpe, by their attorney, Martin S. Fishman, Esq., do hereby file this Plaintiffs' Complaint against Defendants, Maersk, Inc. and Safmarine, Inc., pursuant to, *inter alia,* the following sections of the Shipping Act of 1984, as amended by the Ocean Shipping Reform Act of 1998 (the "Shipping Act"), 46 U.S.C. §§41103(a)(1) and (2), 41104(3), (8) and (10) 4105(3) and (8), 41150(5) and (8).

## JURISDICTIONAL ALLEGATIONS

1. The United States District Court of New Jersey has jurisdiction over the subject matter of this action inasmuch as Plaintiff's assets that the Defendants violated the Shipping Act of 1984 as amended by the Ocean Shipping Reform Act of 1998 (the Shipping Act) 48 U.S.C. §41103(a)(1) and (2), 41104(3), (8) and (10), 4105(3) and (8), 41150(5) and (8).

## PARTIES

2. Plaintiff ("CASSI") was at all times mentioned herein a Non-Vessel Operating Common Carrier ("NVOCC") licensed by the Federal Maritime Commission and is a Corporation incorporated in the State of New Jersey with its principal place of business at the times referred to in this Complaint at 360 Sylvan Ave., Englewood Cliffs, New Jersey 07632. Plaintiff, Barbara Carpe, who at all times mentioned herein, was President of Carpe Air & Sea Shipping, Inc. and resides at 3015 South Ocean Boulevard, Unit: 11D, Highland Beach, Florida 33487.

3. Defendant, Maersk, Inc., is a Corporation organized and existing pursuant to the Laws of New Jersey whose principal place of business in the United States at 2 Giralda Farms, Madison, New Jersey 07940. Maersk, Inc. ("Maersk") is a division of the Danish Corporation, AP Moller-Maersk Group, headquartered at Copenhagen, Denmark at Esplanaden 50, 1098 Copenhagen K, Denmark.

4. Defendant, Safmarine, Inc., ("Safmarine") is a Corporation organized and headquartered in New Jersey and at all times mentioned herein was a subsidiary of its parent carrier, Maersk, Inc. and has a principal place of business in the United States located at 2 Giraldo Farms, Madison, New Jersey 08940.

## FACTUAL ALLEGATIONS
## AS TO SHIPPING ACT VIOLATIONS

5. Plaintiff, Carpe Air & Sea Shipping, Inc., was, at all relevant times mentioned herein, a Non-Vessel Operating Common Carrier ("NVOCC") licensed by the Federal Maritime Commission. Plaintiff, Barbara A. Carpe, was President of this company at all times during mentioned herein.

6. Among other shipping services provided then by CASSI between May 2008, through and including June 30, 2010, CASSI provided shipping services, by carrier, for its largest and

2

most lucrative customer, Medline Industries, Inc. ("Medline"), cargoes being shipped from Asia to Loredo, Texas and Tampa, Florida.

7. As an Non-Vessel Operating Common Carrier ("NVOCC"), CASSI made agreements with carriers to ship Medline cargoes on ships provided by Defendant, Safmarine Inc., and after November, 2009 through June 30, 2010, its parent company, Defendant, Maersk, Inc.

8. Safmarine, Inc. began serving as a carrier for Carpe pursuant to its Service Contract 261591, but in August, 2008 CASSI was notified by Safmarine, Inc. that Safmarine, Inc. would no longer transport shipments in the above-mentioned trade lanes and such service would be replaced in these lanes by its parent company, Maersk, Inc.

9. Nevertheless,, Maersk, Inc. began on/or about September and October 2009 to solicit business from CASSI's largest and most lucrative shipping customer, Medline Industries, Inc., and began to strip the Medline shipments from CASSI and handle these shipments directly as the result of direct contacts and negotiations with Medline Industries, Inc. in violation of the Shipping Act, 46 U.S.C. §§41103(a)(1) and (2), and 41150(5) and (8).

10. As a direct result of this improper conduct by Maersk, Inc. and Safmarine, Inc. in violation of the Shipping Act, CASSI's normal level of shipments for Medline of approximately eighty containers per month before May, 2010 fell to zero containers in July and August, 2010. During the period May, through August 2010, Maersk, Inc. carried eighty-nine containers for Medline on the routes from Asia to Laredo and Tampa Bay. CASSI did provide reduced cargoes of only approximately fifty-four containers in May and June of 2010.

11. By June 30, 2010, CASSI was caused to close its Shipping business because of Maersk's conduct described in the context of Shipping Act violations as described in this Complaint and the Common Law State causes of action set forth below. Upon information and belief, Maersk, Inc. continued to handle Medline shipments at least up to and during

3

July, 2010, and upon information and belief as set forth below thereafter and continuing to date.

12. In November of 2009, a Maersk, Inc. Senior Director made an agreement with Ms. Carpe, both orally and in writing, that CASSI would receive competitive shipping rates and that the company would receive adequate space for shipments on board Maersk ships for Medline shipments. Further; on/or about February 10, 2010, Maersk President, Michael White, gave to CASSI written assurances that Maersk, Inc. would provide CASSI adequate space, would keep CASSI competitive, and would not back-sell CASSI's Medline account.

13. Neither space nor competitive rates were provided to CASSI, and Maersk, Inc.'s back-selling continued relating to Medline shipments on the Asia to Laredo shipping routes.

14. As a direct and proximate consequence of the improper conduct by Maersk, Inc., CASSI failed to earn its moving average of net income in the sum of $215,751.20 measured during September 4, 2008 through September 21, 2009. Adjusting the movable average figure for net income received in 2009-2010, the projected net income loss during these years sustained by CASSI was the sum of $169,523.00.

15. In addition; as a result of Defendants' violations of the Shipping Act described herein, Plaintiff, Barbara Carpe, suffered a reduction and loss of salary as President of CASSI in the amount of $100,000.00 per year in 2009-2010, totaling $200,000.00.

## SHIPPING ACT VIOLATIONS

16. By reason of the facts alleged in Paragraphs 1 through 16, Defendants violated the Shipping Act by imposing unreasonable prejudice and disadvantage with respect to traffic from Asia to Laredo, Texas, and Tampa Florida in violation of 46 U.S.C. §41105(3) and (8), engaging in predatory practices.

4

17. By reason of the facts alleged in the foregoing paragraphs, Plaintiffs violated the provisions of the Shipping Act by wrongful disclosure of information on nature, kind, quantity, destination and routing of property tendered or delivered to Safmarine, Inc. by CASSI and was wrongfully disclosed to Maersk, Inc. in violation of 46 U.S.C. §41103 (a)(1) and (2).

18. Furthermore, Defendants, Maersk, Inc. and Safmarine, Inc., retaliated by refusing cargo space after CASSI complained that Maersk, Inc. was back selling CASSI's customers in violation of 46 U.S.C. §41104(3). Maersk, Inc.'s conduct further violated this section by being unfair and unjustly discriminatory toward the Plaintiff.

19. Also, Maersk, Inc. violated Shipping Act 46 U.S.C. §41104(8) and (10) by providing service pursuant to a Tariff by causing "any undue or unreasonable preference or advantage." Meanwhile, the dealing and negotiation engaged in by Maersk, Inc. was not genuine, good faith negotiation given that Maersk's representations to CASSI regarding space and competitiveness were illusory.

20. Defendant, Maersk, Inc., acted unlawfully and unethically by taking CASSI's business in the form of shipping customers and cargoes, gaining improper profits, 46 U.S.C. §41103(a)(1) and (2) and 46 USC § 41150 (5) and (8).

21. As a direct consequence of Defendants' violations of the Shipping Act stated above, Plaintiffs, CASSI and Ms. Carpe, sustained actual injury during 2009-2010 for loss of net profits to CASSI in the amount of $169,523.00 and by loss of salary to its President, Barbara Carpe, in the amount of $200,000.00.

22. Plaintiff is entitled to an award of damages for Defendant's violation of the Shipping Act sections cited herein including 46 U.S.C. §§41103, 41104, 41105, and 41150.

23. As a direct consequence of the conduct of Defendants in violation of the Shipping Act, Plaintiffs suffered actual injury as provided herein, in the sum of $369,523.00 for Defendants' wrongful conduct in violation of the Shipping Act described in this Complaint

occurring from on/or about September 1, 2009, on/or about October 1, 2010 and continuing to at least August 31, 2010.

24. Plaintiffs suffered actual injury in the amount of $369,000.00 caused by Defendants violating the Shipping Act during September 1, 2009, through and including August 31, 2010, by imposing unreasonable prejudice and disadvantage with respect to traffic from Asia to Laredo, Texas, and Tampa Florida in violation of 46 USC §41105(3) and (8), engaging in predatory practices.

25. By reason of the facts alleged in the foregoing paragraphs, Plaintiffs suffered damages in the sum of $369,000.00 as a direct result of Defendants violating the provisions of the Shipping Act by wrongful disclosure of information on nature, kind, quantity, destination and routing of property tendered or delivered to Safmarine, Inc. by CASSI. This information was wrongfully disclosed to Maersk, Inc. in violation of 46 U.S.C. §41103 (a)(1) and (2).

26. Plaintiffs suffered damages in the amount of $369,000.00 when Defendants, Maersk, Inc. and Safmarine, Inc., retaliated against Plaintiff by refusing cargo space after CASSI complained that Maersk, Inc. was back selling CASSI's customers in violation of 46 U.S.C. §41104(3).

27. Plaintiffs further suffered damages when during on/or about September 1, 2009, through and including August 31, 2010, Defendant, Maersk, Inc. acted unlawfully and unethically by taking CASSI's business in the form of shipping CASSI customers and cargoes, gaining improper profits, 46 U.S.C. §41103(a)(1) and (2) and 46 USC § 41150 (5) and (8).

28. Further, Plaintiffs are entitled to compensation for their attorney's fees incurred in recovering reparations from Defendants in this matter, according to proof, pursuant to 46 CFR §502.254.

## COMMON LAW BREACH OF CONTRACT

29. Plaintiffs repeat and reallege each and allegation set forth in Paragraph 1 through 28 above as if more fully set forth at length herein.

30. Commencing October 2008, Defendant, Safmarine, Inc., provided transportation services to CASSI which included service from Yantian, Hong Kong, Nanjing, Xiamen, Shanghai and Quingdao to Laredo, Texas and Tampa, Florida.

31. In mid-2009, Safmarine, Inc. made a business decision that it would no longer service the Trans Pacific trade lanes.

32. CASSI as an "NVOCC" originally started shipping for Medline in October of 2008 through rate and service structures negotiated directly with Safmarine, Inc. pursuant to Contract Number 261591. Safmarine, Inc. is a subsidy area and/or affiliated of Maersk, Inc. by common ownership and/or control and participated in the Asia to U.S. lanes on Maersk Line vessels.

33. In November of 2009, Maersk, Inc., the parent company of Safmarine, Inc., assumed the services that Safmarine, Inc. was providing to CASSI as per the aforementioned Contract Number 261591.

34. In November of 2009, Maersk, Inc. amended its Service Contract No.: 129170 with the NAAA Shipper's Association to include CASSI as a Member with specific rates for CASSI to Laredo, Texas and Tampa, Florida. Prior to September of 2009, Maersk, Inc. had not previously handled Medline shipping directly for the Asia to Laredo, Texas traffic.

35. In/or about September or October of 2009, Maersk began to solicit Medline directly for the Asia to Laredo, Texas traffic lane ("back-selling") which it previously had not directly handled which resulted in strong protestations by CASSI in that Maersk, Inc. and Safmarine, Inc. were acting unlawfully and unethically by taking CASSI business sensitive information relating to Medline and using it to "back sell" the traffic.

7

36. On/or about November of 2009, Maersk, Inc., orally and by written acknowledgement, made promises to CASSI that it would not continue to back sell the Medline account to Laredo, Texas or Tampa, Florida and that it would charge CASSI competitive rates which would allow it to continue to service its Medline account in the event of any back-selling attempts by Maersk, Inc., and that it would provide CASSI with adequate container space to service its Medline account.

37. After these assurances, CASSI again handled Medline shipments pursuant to the service contract with Maersk, Inc.

38. Regardless of CASSI's agreements, contracts and commitments, Maersk, Inc. continued to back sell Medline, offered Medline better rates than CASSI could offer Medline and still make a profit on the services rendered and provided container space to Medline while refusing such space to CASSI to use for its serving of the Medline account thereby breaching the aforesaid contracts and causing damages in amounts not presently ascertainable by the Plaintiff without further discovery and disclosure but believed to be in excess of $500,000.00

## COMMON LAW INTERFERENCE WITH CONTRACTUAL RELATIONS AND/OR INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

39. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 38 above as if more at length herein.

40. That CASSI had a reasonable expectation of gaining an economic advantage and profit through its servicing of the Medline account.

41. That the Defendants intentionally interfered with that anticipated economic advantage and that the Defendants interference was without justification or excuse.

42. That there was, and is, a reasonable probability that if the wrongful acts set forth above and herein had not occurred, the Plaintiff would have obtained this anticipated economic benefit and thus the Defendants' interference resulted in monetary damage to the Plaintiffs.

8

43. That the Defendants intentional and malicious interference, by way of example and not limitation, included:

  (a) Refusing to provide CASSI with containers and shipping space necessary to service its Medline account while providing space for the same shipping route to Medline directly;

  (b) Soliciting and accepting from Medline, fees and charges for the same services theretofore provided by CASSI to Medline at fees and charges which were lower than those that CASSI could profitably offer to Medline and lower than quotes and prices set by CASSI and known to the Defendants through their contractual relations with and information obtained via their involvement in the shipping of Medline products by CASSI with Safmarine, Inc.;

  (c) Intentionally harmed and did damage to the relationship between Medline and CASSI by continually delaying and postponing the shipment of Medline cargo by CASSI on Maersk vessels without justification and solely in order to harm the relationship between CASSI and Medline;

  (d) In one instance, with full knowledge that Medline only agreed to ship said certain cargo with CASSI upon CASSI's guarantee that said cargo would be shipped in a timely fashion, Maersk, Inc. promised to CASSI that it would be able to accommodate such shipment on time. Based upon such promise, CASSI agreed to ship said cargo for Medline assuring timely shipment, but nevertheless with malice aforethought, Maersk delayed said shipment with actual knowledge, or with implicit knowledge, of the damage it would do to the relationship between CASSI and Medline. During said period of time, Maersk shipped product for Medline directly from Asia to Laredo, Texas, in spite of the last minute notification to CASSI that it had no space for the aforesaid Medline shipments;

  (e) That all of the aforesaid acts were taken with the express intention to destroy the relationship between Medline and CASSI so that the Defendants could deal directly with

9

Medline and obtain profits and economic advantages which otherwise would have inured to the benefit of CASSI;

(f) The aforesaid acts caused the relationship between CASSI and Medline to deteriorate to a point where Medline thereafter completely stopped using CASSI for its shipments from Asia to the United States;

(g) Upon information and belief, thereafter Maersk continued to ship product for Medline to Loredo, Texas and continues to do so to date seeking to avoid any claim of liability hereunder by shipping Medline materials first to Los Angeles and then trans-loading the cargo onto trucks to Laredo;

(h) CASSI has been damaged by the above acts in an amount not presently ascertainable without further discovery and disclosure but believed to be in excess of $500,000.00.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that Judgment be rendered granting the following relief:

1. An Order holding that the Defendants, Maersk, Inc. and Safmarine, Inc.'s activities described herein were unlawful and in violation of the Shipping Act;

2. An Order compelling Defendants, Maersk, Inc. and Safmarine, Inc., to make reparations to Plaintiffs, CASSI and Barbara Carpe, in the amount of $369,523.00 for improperly taking shipping customers of Plaintiff, CASSI and gaining improper profits, and for failing to perform contractual obligations to provide space on Maersk ships and to keep Plaintiff competitive, therefore damaging both Plaintiffs, CASSI and Barbara Carpe, its President;

3. For an Order requiring Defendants, Maersk, Inc. and Safmarine, Inc., to compensate CASSI and Barbara Carpe for their attorney's fees incurred in representing

Plaintiffs and obtaining a judgment in this matter together with costs and expenses incurred in the matter according to proof;

4. For an Order compelling Maersk, Inc. and Safmarine, Inc. to pay Plaintiffs interest provided by law to be paid upon any judgment ordered in this matter;

5. Compensatory damages for Breach of Contract;

6. Compensatory damages for interference with contractual relations and/or prospective economic advantage;

7. Punitive damages in an amount to be assessed by the Court;

8. Such other and further relief as the Court deems just and proper.

Date: November 15, 2012

Respectfully Submitted,

_____
Martin S. Fishman, Esq.

11